# United States Court of Appeals
## For the First Circuit

No. 19-1129

UNITED STATES OF AMERICA,

Appellee,

v.

HECTOR VALDEZ, a/k/a Arnaldo Lopez, a/k/a Jose Ocasio, a/k/a
Jose Altagracia, a/k/a Jorge Figueroa, a/k/a Hector Nunez, a/k/a
Jesus Perez, a/k/a Ramon Alvarez Vegas, a/k/a Hector Bolivar
Valdez Nunez, a/k/a Boli,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

Robert B. Mann and Robert B. Mann Law Office on brief for
appellant.
Donald C. Lockhart, Assistant United States Attorney, and
Aaron L. Weisman, United States Attorney, on brief for appellee.

July 9, 2020

**LYNCH**, **Circuit Judge**.  The defendant, Hector Valdez, pleaded guilty pursuant to a plea agreement and was sentenced on January 18, 2019, to 108 months' imprisonment and three years' supervised release for his role in a major drug conspiracy that distributed heroin and other drugs in Rhode Island, Massachusetts, and Connecticut.  Although the plea agreement he signed contained an appeal waiver, he now appeals anyway, arguing that upholding the validity of the appeal waiver would constitute a "miscarriage of justice."  Specifically, Valdez argues that the district court erred in its consideration of the First Step Act, which was enacted after Valdez signed the plea agreement but before he was sentenced. See Pub. L. 115-391, 132 Stat. 5194 (codified in scattered sections of 18 U.S.C. and 34 U.S.C.).

The sentence the district court imposed was well below the guideline range, was below the government's recommended sentence, and explicitly accounted for the impact of the First Step Act.  There was no miscarriage of justice.  The appeal waiver controls, and this appeal is dismissed.

A.   Background of the Offense and the Plea Agreement

Valdez was arrested on April 11, 2017, along with his brothers Juan and Claudio and others, for his role in a conspiracy to distribute kilogram quantities of heroin (sometimes laced with fentanyl) and cocaine and other quantities of cocaine base (crack cocaine) and opioids in pill form throughout Rhode Island,

- 2 -

Massachusetts, and Connecticut. The arrests were the result of a multi-year investigation conducted by ten different law enforcement agencies. Valdez was charged with conspiring to distribute, and to possess with intent to distribute, one kilogram or more of heroin, and also substances containing fentanyl, cocaine base, and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. He was also charged with illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).

All three brothers had prior drug trafficking convictions, and each had been deported previously. All three were leaders and organizers of the drug conspiracy, but Hector Valdez played more of a supporting role. He was, as described in the Presentence Investigation Report ("PSR"), "perhaps the least culpable of the three Valdez brothers," while still being "an upper level conspirator" and part of "the inner-circle in this conspiracy."

Valdez signed a plea agreement on May 2, 2018. Valdez had multiple prior convictions. If the government had sought a sentencing enhancement based on all of them, under the law at the time the plea agreement was negotiated, Valdez would have faced a mandatory life sentence. Under the terms of the plea agreement, however, the government agreed to seek a sentencing enhancement under 21 U.S.C. § 851 based on only one of his prior convictions, thereby reducing his sentencing exposure to less than a life

sentence. The government also agreed to file a motion under U.S.S.G. § 5K1.1 recognizing Valdez's substantial assistance to the authorities and "asking the Court to impose a sentence below the guideline sentencing range and mandatory minimum sentence of 20 years imprisonment." The agreement acknowledged that "the decision whether, and to what extent to grant [the motion], is solely up to the Court."

Valdez agreed to cooperate in the government's case. And he agreed to waive his right to appeal "if the sentence is a term of imprisonment of 20 years or less."

At the change of plea hearing on May 18, 2018, the district court asked Valdez if he understood that he was waiving his right to appeal the sentence imposed if the sentence was "within or below the guideline range." Valdez replied, "Yes."

B.   Sentencing Proceedings

On August 30, 2018, as contemplated in the plea agreement, the government filed a sentence enhancement information under 21 U.S.C. § 851 listing only the one prior felony drug conviction.

After accounting for Valdez's objection to an earlier draft, the final PSR was filed with the district court on November 21, 2018. It calculated a Total Offense Level ("TOL") of 33, not 35 as an earlier draft of the PSR had stated, and a Criminal History Category ("CHC") of II. Based on that, the Guideline

Sentencing Range ("GSR") would have been 151 to 181 months' imprisonment. But because of a statutorily-imposed mandatory minimum, the restricted guideline sentence was 240 months', or twenty years', imprisonment.

As contemplated in the plea agreement, on November 27, 2018, the government filed a motion pursuant to U.S.S.G. § 5K1.1 for a downward departure below the twenty-year mandatory minimum. The government recommended a five-level reduction in the offense level and a sentence of 120 months', or 10 years', imprisonment.[1]

Before the end of the sentencing proceedings, Congress enacted the First Step Act on December 21, 2018. Section 401(a)(1) of the Act changed the definition of "serious drug felony" such that the drug conviction the government used in support of a sentencing enhancement under 21 U.S.C. § 851 could no longer serve as the basis for a twenty-year mandatory minimum sentence. Instead, Valdez was subject to a ten-year mandatory minimum for all drug offenses involving a kilogram or more of heroin, see 21 U.S.C. § 841(b)(1)(A), before accounting for the impact of the government's § 5K1.1 motion and any downward departure in

---

[1] The government recommended a five-level reduction from 35 to 30, which produced a GSR of 108 to 135 months' imprisonment. This calculation apparently was made partially in error because the final PSR, released six days prior, had calculated an updated TOL of 33, not 35. A five-level reduction from the updated TOL of 33 would produce an adjusted GSR of 87 to 108 months' imprisonment. Any such error is immaterial to this appeal.

recognition of Valdez's substantial assistance, see 18 U.S.C. § 3553(e).

Valdez filed a response to the government's § 5K1.1 motion on January 14, 2019. The response explained why, under the First Step Act, the twenty-year mandatory minimum sentence would no longer apply. It acknowledged that the TOL still would be 33, as calculated by the PSR, with a resulting GSR of 151 to 188 months' imprisonment before accounting for any downward departure in recognition of Valdez's substantial assistance.

Valdez's response to the § 5K1.1 motion then described several ways that the government might update its recommended sentence to account for the enactment of the First Step Act. Valdez argued that a sentence of between sixty and ninety-seven months would be appropriate and consistent with the logic of the government's previous recommendation. Ultimately, based on factors described in 18 U.S.C. § 3553(a), Valdez recommended that the district court sentence him to thirty-six months' imprisonment.

Valdez's sentencing hearing occurred several weeks later, on January 18, 2019. First, the parties agreed that the PSR had correctly calculated a TOL of 33, not 35, and a CHC of II, with a corresponding GSR of 151 to 188 months' imprisonment. The parties also agreed with the defense's analysis that the First Step Act applied to Valdez because he had not been sentenced at

the time of enactment.  Therefore, the prior conviction that was the basis for the sentencing enhancement that had subjected him to the twenty-year minimum was no longer considered a "serious drug offense," and Valdez was subject to the ten-year minimum instead. The parties also agreed that, because the government had filed a § 5K1.1 motion for Valdez's substantial assistance, Valdez was effectively not subject to any mandatory minimum.

The court then asked the government to update, in light of the First Step Act's enactment, the sentencing recommendation it had made in its § 5K1.1 motion.  The government continued to recommend 120 months', or ten years', imprisonment, calling the change in law "unanticipated," and representing that had it known about the First Step Act during plea negotiations, it would have structured the plea agreement differently to reach the same recommended sentence.  The government argued that ten years remained "fair" because of the nature of Valdez's offense, the nature of his assistance to the government, the expectations of the parties, and the need to avoid an unwarranted sentencing disparity between Valdez and his two brothers, both of whom had been sentenced to twenty years in prison.

Defense counsel renewed the arguments he had made in his response to the government's § 5K1.1 motion, after the First Step Act was enacted.  Specifically, he continued to argue that the government should not recommend the same sentence it did before

the enactment of the First Step Act, and he described how the government might recommend a sixty- or ninety-seven-month sentence instead while remaining consistent with the logic of its previous recommendation.

The district court rejected the government's 120-month, or ten-year, recommendation. Instead, it applied the five-level reduction the government had originally proposed to the correct offense level of 33 to achieve an adjusted GSR of 87 to 108 months' imprisonment. The defense had proposed this analysis in its response to the government's § 5K1.1 motion as one of several ways the government might amend its sentencing recommendation. But instead of selecting a sentence in the middle of that range, like ninety-seven months' imprisonment, as Valdez preferred, the district court sentenced Valdez to 108 months in prison and three years' supervised release. The court stated this sentence was imposed to reflect the seriousness and scale of the crime, Valdez's "five or six prior drug convictions," and his illegal reentry after deportation.

The district court was explicit that this sentence included recognition of his cooperation with the government and that "the law has changed," a clear reference to the First Step Act. "I took a year off . . . what [the government] asked for as a happenstance of the new FIRST STEP law . . . . If not, I would have stayed at the 120[-month recommendation], which I think was

what the purpose of [the government's § 5K1.1 motion] was." The court then reminded Valdez that he agreed to an appeal waiver and ended the hearing by saying: "I want to make sure the record is clear, I applied the FIRST STEP Act here, I applied the [§ 5K1.1 motion], and I applied the guidelines in a way that I think does justice and honor to all of them as well as to Mr. Valdez."

Valdez timely appealed.

C. The Appeal Waiver Controls

Valdez argues that he should be allowed to appeal despite his appeal waiver. His argument is not that there is anything defective in the appeal waiver itself, which applies since he was sentenced to 108 months in prison, within the "20 years or less" contemplated in the plea agreement. Rather, he argues that his case satisfies the test for when an appeal waiver must be set aside.

United States v. Morillo describes the criteria used to evaluate the claims Valdez makes:

> - First, the written waiver must comprise "a clear statement" describing the waiver and specifying its scope. [United States v.] Teeter, 257 F.3d [14,] 24 [(1st Cir. 2001)].
> - Second, "[m]indful" of [Federal] Rule [of Criminal Procedure] 11(b)(1)(N), the record must show that the judge's interrogation "suffice[d] to ensure that the defendant freely and intelligently agreed to waive [his or] her right to appeal [his or] her forthcoming sentence." Id.
> - Third, even if the plea agreement and the change of plea colloquy are satisfactory, the

> reviewing court retains discretion to refuse to honor a waiver if denying a right to appeal would "work a miscarriage of justice." Id. at 25.

United States v. Morillo, 910 F.3d 1, 2 (1st Cir. 2018) (some alterations in original), cert. denied, 139 S. Ct. 949 (2019).

Valdez does not challenge the first two grounds. Rather, he argues that his appeal waiver should be set aside under Morillo's "miscarriage of justice" standard. He argues that the district court committed a miscarriage of justice by considering the government's sentencing recommendation of 120 months', or ten years', imprisonment, even though that recommendation "was based on an incorrect version of the presentence report and did not take into proper account the First Step Act, resulting in an erroneous guideline calculation."

There was no miscarriage of justice, and the appeal waiver controls. The district court did not make any erroneous calculations, let alone an error that would have made this one of the "egregious cases" that meets the miscarriage of justice standard. Morillo, 910 F.3d at 4 (quoting Teeter, 257 F.3d at 25). The court correctly found that the pre-departure GSR was 151 to 188 months' imprisonment, based on a TOL of 33. It correctly recognized that the First Step Act changed the pre-departure mandatory minimum from twenty years to ten years. And the district

court was correct that the government's § 5K1.1 motion eliminated its obligation to sentence Valdez to this lower minimum.

On appeal, Valdez almost concedes the point, focusing much of his argument on what the government should have recommended and not on what the district court ultimately did. Valdez provides no authority for the proposition that the district court's mere consideration of the government's recommendation could result in a miscarriage of justice.

Valdez received a sentence well below the unadjusted GSR of 151 to 188 months' imprisonment. The sentencing court's "discretion to decide the amount of the departure after a 5K1.1 motion" is "almost unreviewable." United States v. Webster, 54 F.3d 1, 4 (1st Cir. 1995). Nonetheless, the district court applied the same five-level reduction the government originally recommended in recognition of Valdez's assistance, as Valdez requested. The sentence was also below the government's updated recommendation of 120 months, or ten years. The court explicitly accounted for the First Step Act as well and gave Valdez a year less on his sentence than it would have otherwise, against the government's recommendation. There is no miscarriage of justice that would excuse Valdez's waiver of his right to appeal.

D.   Conclusion

The appeal is dismissed.